Annette W. Jarvis (1649)
Steven T. Waterman (4164)
RAY QUINNEY & NEBEKER, P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone:  801-532-1500
Facsimile:  801-53207543
Email: ajarvis@rqn.com
Email: swaterman@rqn.com

John F. Young (Pro Hac Vice – Docket 1844)
Steven R. Rider (Pro Hac Vice – Docket 2023)
BLOCK MARKUS & WILLIAMS LLC
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Telephone: (303) 830-0800
Facsimile: (303) 830-0809
Email: jyoung@bmwllc.com
Email: srider@bmwllc.com

Attorneys for Plaintiffs
James T. Markus Chapter 11 Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>WILLIAMS FARM LLC<br><br>    Debtor. | Case No. 02-35387<br>Jointly Administered in Case No. 02-35385 |
| JAMES T. MARKUS, Chapter 11 Trustee of<br>WILLIAMS FARM LLC,<br>JAMES T. MARKUS, Chapter 11 Trustee of<br>GENEVA STEEL LLC,<br>JAMES T. MARKUS, Chapter 11 Trustee of<br>GENEVA STEEL HOLDINGS CORP., and<br>JAMES T. MARKUS, Chapter 11 Trustee of<br>IRON ORE MINES LLC,<br>    Plaintiffs,<br>v.<br><br>ALBERT FRIED, JR., ALBERT FRIED & CO.,<br>LLC, a New York Limited Liability Company,<br>STEELMAN, INC., a Delaware corporation,<br>and STEELMAN REALTY, LLC, a Delaware<br>Limited liability company<br>    Defendants. | **Adversary Proceeding No. _____** |

## COMPLAINT

Plaintiff, James T. Markus, the duly appointed chapter 11 trustee herein ("Trustee") for each of the estates of Williams Farm LLC, Geneva Steel LLC, Geneva Steel Holding Corp., and Iron Ore Mines LLC for his complaint against Defendants states and alleges and avers as follows:

## I. PARTIES JURISDICTION & VENUE

1.      Plaintiff James T. Markus is the duly appointed chapter 11 trustee for each of Williams Farm LLC, Geneva Steel LLC, Geneva Steel Holdings Corp., and Iron Ore Mines LLC.  Geneva Steel LLC is a Delaware limited liability company with its principal place of business in the Town of Vineyard, Utah County, State of Utah.  Geneva Steel Holdings Corp. ("Holdings") is a Delaware corporation with its principal place of business in the Town of Vineyard, Utah County, State of Utah.  Iron Ore Mines LLC is a Delaware limited liability company with its principal place of business in the Town of Vineyard, Utah County, State of Utah.  Williams Farm LLC is a Delaware limited liability company with is principal place of business in the Town of Vineyard, Utah County, Utah.  (Hereafter Geneva Steel LLC, Iron Ore Mines LLC, Williams Farm LLC and Holdings may be referred to collectively as the "Debtors.") The Debtors are entities in chapter 11 proceedings properly filed in the United States Bankruptcy Court for the District of Utah.  Holdings own 100% of the membership interests in Geneva Steel LLC, Iron Ore Mines LLC, and Williams Farm LLC, Delaware limited liability companies.

2.      Debtors are successors in interest to the assets of Geneva Steel Co., a Utah Corporation.  Before February 1, 1999, Geneva Steel Co. was engaged in the business of operating a steel mill in the Town of Vineyard, Utah County, State of Utah.  Geneva Steel Co. operated a fully integrated steel mill considered the largest steel integrated manufacturer in the

Western United States.  Geneva Steel Co. was a publicly held company with stock registered on the New York Stock Exchange and was traded in the over-the-counter market.  Also, Geneva Steel Co. had issued publicly traded notes denominated as 11.125% Senior Notes and 9.5% Senior Notes.

3.      This Court has jurisdiction of this matter pursuant to 11 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  It involves issues concerning administration of the estate and property of the estate pursuant to 11 U.S.C. § 541, determination of the claim of Defendant Albert Fried & Co., LLC pursuant to 11 U.S.C. §§ 502 and 506, equitable subordination pursuant to 11 U.S.C. § 510, recovery of fraudulent conveyances pursuant to 11 U.S.C. §§ 544, 548, 549 and 550, and breach of duty of a fiduciary to the estate. The Court also has jurisdiction under 28 U.S.C. § 2201.

4.      Jurisdiction and venue are proper herein.

5.      Albert Fried, Jr., is a resident of the State of New York.  His principal business address is 40 Exchange Place, Suite 512, New York, New York.

6.      Albert Fried & Co., LLC is a limited liability company formed in the State of New York.  Its principal business address is 40 Exchange Place, Suite 512, New York, New York.

7.      Defendant Steelman, Inc., is a corporation formed in the State of Delaware.  Its principal business address is 40 Exchange Place, Suite 512, New York, New York.

8.      Defendant Steelman Realty, LLC is a limited liability company incorporated in the State of Delaware.  Its principal business address is 40 Exchange Place, Suite 512, New York, New York.

9.      At all times pertinent hereto, Albert Fried & Co., LLC (hereafter "Albert Fried &

Co.") was engaged in the business of securities brokerage and is a licensed broker/dealer with the

U.S. Securities and Exchange Commission and the National Association of Securities Dealers.

In 1991, Albert Fried & Co.'s predecessor divided its business and it spun off its specialist

position with the NYSE.  Since then Albert Fried & Co. has engaged in the trading of non-

investment grade securities, including "junk bonds", among traditional retail brokerage activities.

Albert Fried & Co.'s web page states: "Albert Fried & Company, LLC has since expanded both

it's Broker/Dealer function with institutional and select retail investors, and it's role in

restructuring such varied companies as California Federal Bank, Portec, Inc., Emcor Group Inc.

(formerly JWP), and most recently, Geneva Steel Holdings."

10.      At all times pertinent hereto, Defendants engaged in business and transactions

with the Debtors and were often physically present within the State of Utah to effectuate those

transactions.

11.       On or around April 27, 1966, United States Steel Corporation acquired certain

real property located and situated in Utah County, State of Utah from various members of the

Williams family, which real property is legally described as follows:

> Beginning at the Southeast Corner of Section 5, Township 6 South,
> Range 2 East, Salt Lake Base and Meridian; thence North 16.5 feet
> along the Section line to a fence line; thence North 89 degrees 53'
> West along a fence line on the North boundary of 1200 North
> Street, Orem, Utah 465.76 feet; thence North 06 degrees 52' West
> along a fence line on the East boundary of State Highway No. 114,
> Orem, Utah, 1469.36 feet; thence South 89 degrees 35' East along
> a fence line 636.80 feet, thence South 0 degrees 11' East along
> fence line 151.62 feet more or less; thence East 1740 feet more or
> less to the highway right-of-way West line; thence Southerly along
> said right-of-way 1400 feet more or less to the Section line; thence

4

Westerly along the Section line 2100 feet more or less to the point
of beginning.

Hereafter in this complaint, this real property shall be called the "Williams Farm Property." This case involves an option granted to Albert Fried & Co. on the Williams Farm Property. The Williams Farm Property is located across Geneva Road from the main Geneva Steel mill site. The Williams Farm Property is located in the city limits of Orem, Utah.

12.     On or around August 31, 1987, USX Corporation, a successor to the United States Steel Corporation, transferred the Williams Farm Property to the Basic Manufacturing and Technologies of Utah, Inc. Record title to the Williams Farm Property remained in the Basic Manufacturing and Technologies of Utah, Inc. until sometime in 2001.

13.     Basic Manufacturing and Technologies of Utah, Inc. changed its name on January 17, 1990 to Geneva Steel. On February 17, 1993, Geneva Steel changed its corporate name to Geneva Steel Company. Legal title to the Williams Farm Property passed to Geneva Steel Company as a matter of law upon the change of the corporate name.

14.     The Williams Farm Property was used in the Geneva Steel steel mill operations from its acquisition in 1987 until approximately November 15, 2001. The Williams Farm Property provided sand used in the steel making operations at the steel mill plant site.

15.     During the period of approximately eighteen months before February 1, 1999, Albert Fried & Co., or its predecessor was engaged in transactions involving the purchase of Geneva Steel Co. 11.125% Senior Notes and 9.5% Senior Notes (hereafter the "Notes"). Albert Fried & Co., or its predecessor, acquired approximately $60 million of the Notes in the open market before Geneva Steel Company filed its bankruptcy petition in February 1999.

16.     During the fall of 1998 and January of 1999, principals of Albert Fried & Co.,

served on an informal committee of bondholders of Geneva Steel Co.  Albert Fried was

personally present during numerous meetings of those bondholders and the management and

professionals representing Geneva Steel Co. during the attempted workout of the bondholders'

claims against Geneva Steel Co.  During these meetings, Albert Fried became aware of inside

information pertaining to the financial condition of Geneva Steel Co.  Upon information and

belief, Albert Fried & Co. continued to acquire Notes of Geneva Steel Co.  Also during these

meetings, Albert Fried became aware that certain assets of Geneva Steel Co. were considered

nonessential to the operation of the steel mill and the valuation of those assets by the

management of Geneva Steel Co. and its independent professionals. Those assets included the

Williams Farm Property and the Iron Ore Mines located in southern Utah and later owned by

Iron Ore Mines LLC. Such information was not public information.

17.     During the month of January 1999, an informal committee of the bondholders

met with representatives of Geneva Steel Company to attempt to work out an extension on the

payments due bondholders and preferred shareholders of Geneva Steel Company.  During this

time, the bondholders were represented by Stephen Garcia ("Garcia") of the firm Hopkins &

Sutter of Chicago, Illinois.  When those negotiations were unsuccessful, Geneva Steel Company

determined it would file a chapter 11 bankruptcy petition.  At all times pertinent hereto, Garcia

represented Albert Fried, individually, Albert Fried & Co., and from time to time represented the

interests of Steelman, Inc. and Steelman Realty, LLC.  Upon information and belief, at all times

pertinent hereto, Garcia held and maintained a brokerage account with Albert Fried & Co.  At no

6

time during these proceedings did Garcia ever disclose to the Bankruptcy Court or the creditors the existence of his brokerage account at Albert Fried & Co.

18.     On February 1, 1999, Geneva Steel Co. filed a chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Utah.  The Williams Farm Property and Iron Ore Mines property were scheduled as real property in Geneva Steel Company real property schedules.

19.     On February 22, 1999, the US Trustee appointed Simplon Investment, Albert Fried & Co., Loomis Sayles & Co. and Bankers Trust Company as the bondholders committee. Albert Fried, managing partner of Albert Fried & Co., and Fred Vyn, investment counsel for Loomis Sayles & Co., were appointed co-chairmen of the bondholders committee.

20.     On March 9, 1999, the bondholders moved the Bankruptcy Court for the appointment of Hopkins & Sutter (Garcia) as counsel for the bondholders committee. That application contained the disclosure by Garcia that he had been representing the bondholders pre-petition.  (GSC Docket #130)  On April 15, 1999, the Bankruptcy Court entered an Order for Appointment of Hopkins & Sutter (Garcia) as counsel for the bondholders committee.  (GSC Docket #206)

21.     During the Geneva Steel Company case, several offers to purchase the Williams Farm Property were made by third parties.  Those offers included potential sales of up to $5.2 million.  Geneva Steel Company had an appraisal performed on the Williams Farm Property and a value of approximately $5 million was estimated for the Williams Farm Property.  Defendants Albert Fried and Albert Fried & Co. became aware of the valuation on the Williams Farm Property due to the sharing of this information with the Official Committee by Geneva Steel

Company.  Albert Fried & Co. knew or should have known of the value of the Williams Farm

Property because it was on the service list of creditors to receive notice of the motions to approve

the sale of the Williams Farm Property to those third parties.

22.    Upon information and belief, in December 1999, Defendants Albert Fried and

Albert Fried & Co. became aware or should have become aware of the fact that the Williams

Farm Property had a value of at least $5 million and that at least one offer on the Williams Farm

Property was made by a third party that did not contain any contingencies for financing,

rezoning, or inspection.

23.    Upon information and belief, in January 2000, Defendants Albert Fried and

Albert Fried & Co. became aware or should have become aware of the fact that an environmental

and geophysical soils test was completed for the Williams Farm Property.  The reports indicated

that the Williams Farm Property was probably free of any environmental contamination and that

the soils were suitable for commercial and residential development.

24.    During January 2000, the Official Committee of Bondholders, including

Defendants Albert Fried and Albert Fried & Co. negotiated with Geneva Steel Company on the

proposed plan of reorganization.  The Official Committee of Bondholders represented to Geneva

Steel Company that the holders of the Notes would agree to exchange their Notes for an equity

interest in Geneva Steel Company as a part of a chapter 11 plan of reorganization, if Geneva

Steel Company could obtain working capital in excess of the amount necessary to payoff its

debtor in possession financing with Congress Capital.  On or around January 31, 2000, Geneva

Steel Company filed an application with the Emergency Steel Loan Guaranty Board ("Board")

for a government guaranteed loan sufficient to meet the requirements of the Official Committee

of Bondholders.  On or around January 31, 2000, Citicorp, USA became the lead lender on the

loan application filed by Geneva Steel Company with the Board.  Based on this plan, Albert

Fried & Co would obtain the largest equity interest in the reorganized Geneva Steel Company.

25.     On or around March 22, 2000, Albert Fried & Co. entered into a Standby

Commitment to Exercise Equity Rights for Convertible Preferred Stock to be Issued Pursuant to

Chapter 11 Plan of Reorganization (hereafter called the "Commitment").  Pursuant to the terms

of the Commitment, Albert Fried & Co. committed to purchase, on a standby basis, $10 million

of Geneva Steel Company preferred stock to be issued under the plan of reorganization.

26.     After March 22, 2000, the Official Committee of Bondholders and Geneva Steel

Company prepared a plan of reorganization that would be jointly proposed by the debtor and the

committee.  Albert Fried attended several meetings between negotiators for the debtor and the

committee and reiterated his strong support for the plan, including the Commitment and the

support of the committee to the plan.  In reliance on his support, Geneva Steel Company did not

pursue any alternative plans, including a business plan involving the offering of equity interests

to the general public in the reorganized debtor.

27.     On or around July 20, 2000, a plan of reorganization of Geneva Steel Company

was jointly filed Geneva Steel Company and the Official Committee of Bondholders  (Docket

#708).  The plan incorporated the Commitment of Albert Fried & Co. to purchase, on a standby

basis, $10 million of Geneva Steel Company preferred stock to be issued under the plan of

reorganization.  The plan also envisioned exit financing in the nature of a term loan of $110

million, in three tranches: Tranche A, Tranche B, and Tranche C (the "Term Loan").  Tranches A

and B were partially guaranteed by the U.S. government.  Tranche C was not guaranteed by the

U.S. government.  The Tranche C loan terms did not provide as a condition of the loan any grant or transfer of the Williams Farm Property to the lender of the Tranche C loan.

28.     Sometime in late August or early September 2000, Citigroup indicated to Geneva Steel Company and the Official Committee of Bondholders that it could not locate a lender willing to commit to make the Tranche C portion of the Term Loan.

29.     On or around September 28, 2000, Geneva Steel Company offered to release Albert Fried & Co. from its commitment to purchase $10 million of the preferred stock offering in exchange for Albert Fried & Co.'s commitment to make the Tranche C portion of the Term Loan.

30.     On or around November 20, 2000, Geneva Steel Company and Albert Fried & Co. entered into a commitment letter whereby Albert Fried & Co. agreed to fund approximately $9.8 million of the Tranche C portion of the Term Loan.  Pursuant to this commitment, Albert Fried & Co. committed to fund the Tranche C portion of the Term Loan on the condition that Geneva Steel Company's plan of reorganization be approved by the Bankruptcy Court. The commitment letter did not require that the reorganized debtor provide an option on the Williams Farm Property in consideration of making the loan pursuant to the Tranche C portion of the Term Loan.

31.     On or around November 21, 2000, Geneva Steel Company and the Official Committee of Bondholders jointly filed a Third Amended Plan of Reorganization with the Bankruptcy Court (hereafter the "Third Plan").  (Docket Entry #1068).  Garcia on behalf of Albert Fried for the Official Committee of Bondholders signed the Third Plan.  The Third Plan did not provide that Albert Fried & Co. would receive an option on the Williams Farm Property

10

in consideration of making the loan pursuant to the Tranche C portion of the Term Loan.

Furthermore, the disclosure statement accompanying the Third Plan made no indication that the

Williams Farm Property would be used as collateral for any portion of the Term Loan. Albert

Fried signed this disclosure statement. Also, the Third Amended Plan of Reorganization

provided that the Williams Farm Property would be transferred to Williams Farm LLC free of

the claims of any creditors, including Albert Fried & Co.

      32.     On or around November 28, 2000, and in contemplation of the confirmation of

the Third Plan, Williams Farm LLC was formed in the State of Delaware. Michael Yonkers,

Murray Drabkin and Frank MacInnis were appointed as managers of Williams Farm LLC. A

limited liability company agreement was executed and provided that the managers of the

company shall not undertake any action without the approval of the members including "the

reorganization, consolidation, merger or sale of all, substantially all or a material amount of the

assets of the Company."

      33.     On or about December 8, 2000, the United States Bankruptcy Court for the

District of Utah entered an order confirming the Third Plan in the Geneva Steel Co. bankruptcy

case. As a part of the Plan, Albert Fried was appointed a director of the reorganized Geneva

Steel LLC.

      34.     The Third Plan provided for the division of the assets of the debtor into separate

entities and exit financing provided by a syndicate of lenders, including a federally guaranteed

loan for 85% of the exit financing. Also, as a part of the plan, Geneva Steel Company was

restructured whereby Geneva Steel LLC became an operating company to operate the Geneva

Steel mill and works and became a wholly owned subsidiary of Holdings.  The Third Plan also establized several other subsidiaries of Holdings.

35.      The other subsidiaries of Holdings established as a part of the reorganization were Iron Ore Mines LLC, Vineyard Management Company, Vineyard Iron Company and Williams Farm LLC.  Certain iron ore mines owned by Geneva Steel Co. were transferred to Iron Ore Mines LLC.  On or around December 20, 2000, the Williams Farm Property was purportedly transferred to Williams Farm LLC by Geneva Steel Company; however, the incorrect name was used in the deed of transfer, since record title to the Williams Farm Property was still in The Basic Manufacturing and Technologies of Utah, Inc.

36.      Based on the recommendation and nomination of Albert Fried, the following individuals were named as the slate for members of the board of directors of the reorganized debtor, Holdings and Geneva Steel LLC:

*Class I directors were*: 1. R. J. Shopf of New Orleans, La.; 2.  Frank T. McInnis of Norwalk, Connecticut; and 3. Murray Drabkin, Washington, DC

*Class II directors were*:  1. Ken Johnsen, Geneva Steel Co.; 2. Albert Fried Jr. Albert Fried & Co. LLP New York City; 3. A. Stanley West of Cleveland, Ohio; and 4. John LaMaccia.

*Class III directors were*: 1.  Joseph A. Canon of Geneva Steel Co.; 2. Donald R. Shepherd, Rancho Santa Fe, California; and 3.  Michael T. Yonkers, of Oak Brook, Illinois. Upon information and belief, at all times pertinent hereto, Albert Fried controlled a majority of the directors and directed their votes on major issues presented to the Board.

37.    The Board of Directors of Holdings made most material decisions relating to the subsidiaries of Holdings, including Williams Farm LLC.  At all times pertinent and until January 2003, Albert Fried was a member of the Board of Directors of Holdings.

38.    Upon the consummation of the Third Plan, stock in Holdings was issued to creditors of Geneva Steel Company.  Approximately 20% of the stock of Geneva Steel Holdings was issued to Albert Fried & Co. on account of its $60 million claim as a bondholder in Geneva Steel Company during early 2001.

39.     At the time of the approval of the Third Plan, the Pension Benefit Guaranty Corporation ("PBGC") made a claim against Geneva Steel Company and the reorganized debtor, Holdings and its subsidiaries and the other Debtors herein.  Because of the operation of various federal statutes relating to the claims of the PBGC, Holdings and its subsidiaries, if PBGC's claim is allowed, then the Debtors are jointly and severally liable for the claim.  PBGC asserts that its claim against the Debtors in excess of $20 million.  Payment of the PBGC claim therefore benefits each of the Debtors' estates.

40.    If the PBGC claim is allowed, Geneva Steel LLC, Iron Ore Mines LLC and Holdings hold claims against Williams Farm LLC for contribution obligations from Williams Farm LLC.  Holdings , Iron Ore Mines LLC, and Geneva Steel LLC are potential creditors of Williams Farm LLC.

41.     The exit financing of Geneva Steel Co. provided for in the Third Plan included a loan facility consisting of a $110 million term loan and a revolving operating loan (hereafter the "Exit Credit Facility").

13

42.     On or around December 13, 2000, Albert Fried & Co. made a bridge loan to Geneva Steel Company for $3.5 million.  The bankruptcy court approved the loan on or around December 15, 2000.  (Docket Entry # 1119)  The terms of the bridge loan did not contain the grant of an option to Albert Fried & Co. on the Williams Farm Property.

43.     Notwithstanding his obligation to fund the Tranche C loan, shortly before the closing on the Exit Credit Facility, Albert Fried & Co. demanded an option to purchase the Williams Farm Property for the purchase price of $1 million (the "Option").  Upon information and belief, the officers of Geneva Steel Company agreed to submit the proposed Option to the Board of Holdings, the Board of Managers of Geneva Steel LLC and the Board of Managers of Williams Farm LLC, and grant the Option on the Williams Farm Property, but the Board of Directors of Geneva Steel Company and Holdings did not approve the granting of the Option until after the funding of the Tranche C loan.  The granting of the Option to Albert Fried & Co. from Williams Farm LLC was made without bankruptcy court approval and without disclosure to the creditors in the Geneva Steel Co. bankruptcy case.

44.     The granting of the Option on the Williams Farm Property was without any consideration to Williams Farm LLC.  During the negotiations of the Option, Garcia in his capacity as legal counsel represented Al Fried and Albert Fried & Co.

45.     The consideration allegedly given by Albert Fried & Co. to Holdings, but not Williams Farm LLC, for the Option on the Williams Farm Property was allegedly Albert Fried Co.'s willingness to participate on the Exit Credit Facility as a participant and not a lender. There was no consideration to Williams Farm LLC granted by Albert Fried & Co. for the Option on the Williams Farm Property, and Albert Fried & Co. was aware of this fact or should have

been aware of this fact at the time of the grant of the Option.  In addition, the Option on the

Williams Farm Property required as a condition precedent the approval of the Option by the

Board of Directors or Managers of Williams Farm LLC, Holdings, and Geneva Steel LLC.  Only

the Board of Directors of Holdings purportedly approved the grant of the Option.

46.    On or around January 3, 2001, the $110 million in exit financing, including the

Tranche C loan was funded.  The loan proceeds were used, in part, to pay off the Congress

Financial loan and to pay loan fees to the lenders.  Geneva Steel LLC signed and executed

various documents in connection with the Term Loan.  The Term Loan Agreement, signed by

Geneva Steel LLC, contained numerous financial covenants, including a covenant requiring

Geneva Steel LLC to maintain certain levels of liquidity.

47.    On or around January 3, 2001, the Tranche C loan agreement was amended

between Geneva Steel LLC and Albert Fried & Co.  Albert Fried & Co.'s agreement to fund the

Tranche C loan was not conditioned upon the grant of the Option.  Furthermore, Albert Fried &

Co. agreed to fund the Tranche C loan agreement knowing that the Option on the Williams Farm

Property had yet to be approved by the board of directors of Holdings, the board of managers of

Williams Farm LLC and the board of managers of Geneva Steel LLC.  The approval of the grant

of the Option by the board of managers of Williams Farm LLC and the board of managers of

Geneva Steel LLC was never given.

48.    On or around January 3, 2001, Albert Fried & Co. funded the Tranche C loan and

executed a participation agreement with Citicorp North America, Inc. and other instruments

necessary to close the Term Loan.  On or around January 3, 2001, Geneva Steel LLC signed and

delivered to Albert Fried & Co. the Term C Loan Note.  On or around January 3, 2001, Citicorp

15

USA, Inc. signed and delivered to Albert Fried & Co. the Participation Certificate for the Term C
Loan and Albert Fried & Co. accepted the participation.  Albert Fried & Co. funded the Tranche
C loan before the Option on the Williams Farm Property was granted by the requisite owner and
before approval by the required affiliate companies.

49.     On or around January 3, 2001, Tim Yonker, Murray Drabkin, and Frank MacInnis
were elected and qualified as the directors of Williams Farm LLC by Holdings, the sole member
of Williams Farm LLC.  Upon information and belief, Tim Yonker, Murray Drabkin, and Frank
MacInnis never held a meeting of the managers or directors in accordance with the provisions of
Delaware limited liability company laws to approve the grant of the Option on the Williams
Farm Property to Albert Fried & Co.

50.     An option agreement dated as of January 3, 2001 was signed by Ken Johnsen,
purported Manager of Williams Farm LLC, and Albert Fried & Co.  The option agreement
purported to grant to Albert Fried & Co. the Option to purchase the Williams Farm Property for
$1 million.  This Option was never approved by the board of directors or managers of Williams
Farm LLC as required by the terms of the Williams Farm LLC operating agreement and
Delaware limited liability company laws.  Ken Johnsen was not a manager of Williams Farm
LLC at the time that the Option agreement was signed by him.  Even if the Option agreement
was valid, it contained several conditions.  Those conditions were never satisfied.  The Option
agreement also stated that it was not conditioned on the closing of the Tranche C loan by Albert
Fried & Co.  The Option agreement was never approved by the Bankruptcy Court and was never
disclosed to the creditors in the Geneva Steel Company bankruptcy case.

51.     On or around January 11, 2001, Holdings filed a Form 10-K with the U.S.

Securities & Exchange Commission.  Upon information and belief, the Form 10-K was duly

signed by the officers and directors of Holdings, including Albert Fried.  In that Form 10-K,

there is an acknowledgement that the grant of the Option to Albert Fried & Co. had to be

approved by the board of directors of Holdings

52.     On or around January 26, 2001, Holdings Board of Directors met and purportedly

approved the grant of the Option to Albert Fried & Co.  as a part of the repricing of the Tranche

C loan.  No consideration was given to Holdings by Albert Fried & Co. for the grant of the

Option on the Williams Farm Property.  No consideration was given to Williams Farm LLC by

Albert Fried & Co. for the grant of the Option on the Williams Farm Property.  No consideration

was given to Geneva Steel LLC by Albert Fried & Co. for the grant of the Option on the

Williams Farm Property.  There was no approval of the grant of the Option made by a properly

convened board of directors or managers of Geneva Steel LLC or Williams Farm LLC.  There

was no fair consideration nor was any reasonably equivalent value provided to Holdings,

Williams Farm LLC, or Geneva Steel LLC for the grant of the Option. Upon the approval of the

repricing of the Tranche C Term Loan, Albert Fried & Co. would earn an interest rate yield of

39% per annum, based on the value of the Williams Farm Option of $2.5 million.  Based on the

value of the Williams Farm Property of approximately $5 million (based on the appraised value

known by Albert Fried), the interest rate yield on the Tranche C loan was approximate 50% per

annum.

53.      During 2001, the financial condition of Geneva Steel LLC continued to

deteriorate.  During management meetings and board of directors meetings beginning in January

2001 and through all of 2001, reports from management indicated that product prices were continuing to decline, losses of the company were mounting, and the company was suffering from a severe liquidity crisis. Senior management also reported to the Board of Directors, including Albert Fried that the operating company, Geneva Steel LLC, was in violation of its financial covenants on the Term Loan, including the liquidity covenant. Amendments to the covenants were necessary to prevent Geneva Steel LLC from remaining continuously in violation of those financial covenants. Albert Fried knew or should have known of all of these reports and violation of the financial covenants on the Term Loan and was or should have been aware of the financial uncertainty facing Geneva Steel LLC to continue as a going concern.

54.    On or around July 16, 2001, Holdings' independent auditors issued a letter to management of Holdings expressing the opinion that Holdings could not meet the requirements necessary for them to issue an opinion without noting that Holdings could continue as a going concern. Albert Fried knew or should have been aware of the opinion of the independent auditors that Geneva Steel could not continue as a going concern without a substantial infusion of capital.

55.    On or around May 30, 2001, Geneva Steel LLC issued a press release that reported that the company had lost $30 million for the first quarter of its fiscal year. On or around June 1, 2001, Holdings filed a Form 8-K with the U.S. Securities & Exchange Commission. In the Form 8-K, the registrant reported the losses suffered by the operating company during the first quarter of its fiscal year. Albert Fried knew or should have known of the press release and Form 8-K announcing the poor financial results of Geneva Steel LLC.

56.     On or about August 14, 2001, the Board of Directors of Holdings met.  Among the items on the agenda of the Board was the consideration of Albert Fried's request to reduce the cost of the Option on the Williams Farm Property.  Based on a presentation by Garcia to the Board, the Board approved a reduction in the price of the Option on the Williams Farm Property as of the effective date of the registration statement for certain securities of Holdings.  No consideration was given to Holdings by Albert Fried & Co. for the reduction of the price of the Option on the Williams Farm Property.  No consideration was given to Williams Farm LLC by Albert Fried & Co. for the reduction of the price of the Option on the Williams Farm Property.  No consideration was given to Geneva Steel LLC by Albert Fried & Co. for the reduction of the price of the Option on the Williams Farm Property.  There was no approval of the reduction of the price for the Option on the Williams Farm Property made by a properly convened board of directors or managers of Geneva Steel LLC or Williams Farm LLC.  There was no fair consideration nor was there any reasonably equivalent value provided to Holdings, Williams Farm LLC, or Geneva Steel LLC for the reduction of the price of the Option on the Williams Farm Property.

57.     Several management meetings and board meetings were held during the period from October 2001 through January 2002.  Senior management of Geneva Steel LLC presented reports on the valuation of its assets, information on business strategies, and financial reports on the liquidity of the company to the board, including Albert Fried.  Based on the valuation reports and financial reports, Albert Fried knew of should have known that Geneva Steel LLC was technically insolvent.

58.    On or around September 17, 2001, the registration statement for certain securities of Holdings became effective.  On this date, Holdings declared that the price of the Option on the Williams Farm Property was reduced from $1 million to $218,630.40 (hereafter the "First Reduction of the Williams Farm Option").

59.    No consideration was given to Williams Farm LLC by Albert Fried & Co. for the reduction of the price of the Option on the Williams Farm Property.  No consideration was given to Geneva Steel LLC by Albert Fried & Co. for the reduction of the price of the Option on the Williams Farm Property.

60.    No consideration was given to Holdings by Albert Fried & Co. for the First Reduction of the Williams Farm Option.  There was no approval of the reduction of the price of the Williams Farm Option by the properly convened board of directors or managers of Geneva Steel LLC or Williams Farm LLC. There was no fair consideration nor was any reasonably equivalent value provided to Holdings, Williams Farm LLC, or Geneva Steel LLC for the First Reduction of the Williams Farm Option.

61.    By October 2001, Geneva Steel LLC was again in violation of the covenants on the Term Loan.  Meetings between senior management of Geneva Steel LLC, Albert Fried, and senior management of the Term Loan lenders and attorneys representing all parties took place in October and November 2001.  The outcome of those meetings indicated that the Term Loan lenders would not continue to allow Geneva Steel LLC to operate its business in violation of the financial covenants of the Term Loan.  On November 15, 2001, Geneva Steel LLC formally announced that it would shut down its steel making operations at the Geneva Steel mill in Vineyard, Utah, due in part to the liquidity crisis of the company.  Representatives of Geneva

Steel LLC and the Term Loan lender worked out a forbearance agreement between the parties

allowing restricted use of cash collateral.

62.     On or around December 21, 2001, Geneva Steel LLC repaid the revolving line of

credit portion of the Exit Financing in full and an amended forbearance agreement was signed.

Further, continued use of cash collateral was conditioned on Geneva Steel LLC filing a chapter

11 bankruptcy in the Bankruptcy Court for the District of Utah.

63.     Between January 2001 and January 2002, Albert Fried & Co. acquired

approximately an additional one million shares of Holdings.  By January 2002, Albert Fried &

Co. had increased its equity share interest in Holdings to approximately 31% of the common

stock of Holdings.  Albert Fried & Co. controlled Holdings, which in turn, due to its 100%

ownership of Geneva Steel LLC, controlled Geneva Steel LLC, and Iron Ore Mines LLC.  As

such, Albert Fried & Co., as a controlling member of the Board of Directors of Holdings, had a

duty to the creditors of the Debtors, Geneva Steel LLC and Iron Ore Mines LLC, to maintain and

preserve the value of their assets for the benefit of the creditors of Geneva Steel LLC and Iron

Ore Mines LLC, including their secured and unsecured creditors.  Albert Fried & Co. was an

insider of Holdings Corp and, because of its actual control over Geneva Steel LLC, was an

insider of the Geneva Steel LLC.

64.     According to a Form 13-G filed by Albert Fried & Co. with the U.S. Securities &

Exchange Commission on February 15, 2002, Albert Fried and Co. granted to Ken C. Johnsen,

President and Chief Executive of Holdings, an option to purchase 75,000 shares of common

stock of Holdings, which option was granted on January 7, 2002.

21

65.     On or around January 16, 2002, the board of directors of Holdings met and approved the filing of a chapter 11 bankruptcy proceeding on behalf of the operating company, Geneva Steel LLC.  Albert Fried was on the board of directors at the time of this approval, although he apparently abstained from voting on the resolution.  Albert Fried remained on the Board of Directors of Holdings until sometime in January 2003.  Albert Fried had and maintained a conflict of interest during the time he was on the Board of Directors of Holdings and Geneva Steel LLC and until his resignation.  However, Albert Fried owed a duty to Holdings and Geneva Steel LLC to put the interests of the companies before his personal interest and the interest of Albert Fried & Co.

66.     On January 25, 2002, Geneva Steel LLC filed a chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Utah.  The debtor filed an application seeking to appoint Garcia and other members of the firm of Kaye Scholer as counsel for the debtor.  The application was approved by the bankruptcy court.

67.     During the early days of the bankruptcy case, Geneva Steel LLC sought the use of cash collateral.  An application for use of cash collateral was filed by the debtor and a stipulation providing for the use of cash collateral on a preliminary basis was filed with the bankruptcy court on or around January 28, 2002.  Albert Fried & Co. was a secured creditor of Geneva Steel LLC at the time of the filing of the application, in addition to possessing a 31% ownership interest in Holdings.  Although Albert Fried & Co. knew or should have known that its interest rate yield was approximately 50% per annum, the application filed by Geneva Steel LLC (and stipulation with the Term Loan lenders) stated that the Term Loan's overall blended interest rate was 6.5%. While technically accurate because the Term Loan contained two other tranches at a much lower

22

interest rate than the Tranche C Term Loan, the application was materially false in that it did not

disclose to the bankruptcy court or the creditors that one of the prepetition lenders, Albert Fried

& Co., was receiving an interest rate yield on its loan of between 39% and 50%.  Furthermore,

notwithstanding that Albert Fried was or should have been aware that the granting of the Option

on the Williams Farm Property was without bankruptcy court approval in the Geneva Steel

Company case was a material fact, the statements made by Garcia to the Bankruptcy Court at the

hearing on January 28, 2002, Garcia represented to the Bankruptcy Court that all aspects of the

prepetition lenders' secured claim were approved and authorized in the Geneva Steel Company

bankruptcy case.  The application for use of cash collateral and the statements made by Garcia at

the hearings on applications to approve the use of cash collateral failed to disclose the high yield

on the Tranche C loan, the granting of the Option on the Williams Farm Property without

bankruptcy court approval, and the fact that Albert Fried & Co. held an approximate 31% equity

interest in Holdings, the parent company of Debtor, Geneva Steel LLC, and thus held control

over Geneva Steel LLC.

68.     Based on the application and the statements made by Garcia at the hearing on

January 28, 2002, the bankruptcy court approved the cash collateral stipulation and application

of Geneva Steel LLC.  One aspect of the cash collateral stipulation provided that the prepetition

lender's secured claims were legally binding obligations and that there were no offsets, defenses

or counterclaims to the prepetition indebtedness.  The failure of Albert Fried & Co. to correct the

misstatements and omissions of Garcia and Geneva Steel LLC in its application and at the

hearing before the Bankruptcy Court on January 28, 2002 constitutes grounds for the bankruptcy

court to set aside the cash collateral order entered in the Geneva Steel LLC bankruptcy case relating to the claims of Albert Fried & Co.

69.     The cash collateral stipulation was renewed at least five more times during the case.  At no time during the renewal applications, or any hearings on the applications did Albert Fried & Co. present any facts correcting the misstatement and omissions described in the above paragraphs.

70.     During the first six months of the bankruptcy case, Albert Fried demanded that Geneva Steel LLC provide various services to Defendants, including but not limited to:  the use of legal counsel of the debtor to perform legal services for and on behalf of the Defendants, the use of debtor's employees to perform various services for and on behalf of the Defendants, and the use of the debtor's property and equipment for and on behalf of the Defendants.  Defendants did not and have wholly failed to compensate the debtor for these services rendered.  The services performed for Defendants by Geneva Steel LLC include, but are not limited to:

(a) Legal counsel for Geneva Steel LLC incorporated Steelman, Inc. in the State of Delaware and prepared the initial legal papers for the company;

(b) Easements, title work, and contracts were negotiated for and on behalf of Defendants by Geneva Steel LLC, its legal counsel, officers, and employees; and

(c) Development work on the Williams Farm Property was performed by Geneva Steel LLC, its legal counsel, officers and employees;

71.     On or around April 17, 2002, Albert Fried & Co. purportedly assigned the Option on the Williams Farm Property to Defendant Steelman, Inc.  On or around April 17, 2002, Defendants Albert Fried & Co. and Steelman, Inc. purportedly exercised the Option on the

24

Williams Farm Property by providing notice of exercise of the Option to Williams Farm LLC and by providing notice of the assignment of the Option to Williams Farm LLC.

72.     On or around April 23, 2002, Albert Fried & Co. demanded that the Board of Directors of Holdings reduce the price of the Option on the Williams Farm Property (hereafter the "Second Reduction of the Williams Farm Option").   Based on information provided by Garcia to the Board, the price of the Option was reduced by approximately $141,000 to $76,000. No consideration was given to Holdings by Albert Fried & Co. for the Second Reduction of the Williams Farm Option.  No consideration was given to Williams Farm LLC by Albert Fried & Co. for the Second Reduction of the Williams Farm Option.  No consideration was given to Geneva Steel LLC by Albert Fried & Co. for the Second Reduction of the Williams Farm Option.  There was no approval of the Second Reduction of the Williams Farm Option made by a properly convened board of directors or managers of Geneva Steel LLC or Williams Farm LLC. There was no fair consideration nor was there any reasonably equivalent value provided to Holdings, Williams Farm LLC, or Geneva Steel LLC for the Second Reduction of the Williams Farm Option.  Further, the price was reduced for the benefit of Albert Fried & Co., notwithstanding that approximately one week earlier Albert Fried & Co. had assigned its interest in the Option on the Williams Farm Property to Steelman, Inc. and Albert Fried & Co. no longer had any interest in the Option.

73.     On or around April 30, 2002, a pre-closing was held on the sale of the Williams Farm Property from Williams Farm LLC to Steelman, Inc.  The closing documents, including the Special Warranty Deed from Williams Farm LLC to Steelman, Inc., were signed by Ken Johnsen on behalf of Williams Farm LLC.  According to the corporate records of Williams Farm LLC,

Ken Johnsen was not an authorized officer of the seller at the time of the closing.  While a corporate resolution was prepared and signed by Ken Johnsen, Joe Cannon, and Steve Bunker, as managers, these three individuals were not managers of Williams Farm LLC at the time of the closing nor any time before the closing.  No proper authority was provided to Ken Johnsen to sign and execute the closing documents.

74.    On or around May 2, 2002, a Special Warranty Deed from Williams Farm LLC to Steelman, Inc. was signed by Steve Bunker on behalf of Williams Farm LLC.  Steve Bunker did not have the authority to sign the Special Warranty Deed on behalf of Williams Farm LLC at the time of the execution of the deed.  The Special Warranty Deed was not recorded in the clerk and recorder records until May 23, 2002.

75.    On May 8, 2002, an appraisal was performed on the Williams Farm Property by an independent third party.  The appraisal reflects a value of $80,000 per acre or a total appraised value of $6,128,000.  At the time of the transfer to Steelman, Inc., for approximately $76,000, Williams Farm LLC lost the value of approximately $6,052,000.  The transfer of the Williams Farm Property to Steelman, Inc. was for less than reasonably equivalent value.  Fair consideration was not provided to Williams Farm LLC by Steelman, Inc. for the transfer of the Williams Farm Property, if the transfer is deemed valid.

76.    On May 10, 2002, PBGC filed a notice lien pursuant to 26 U.S.C. § 412(n) against the Williams Farm Property for approximately $925,000.  After substantial efforts expended by representatives of Geneva Steel LLC, PBGC agreed to release the lien against the Williams Farm Property.  By releasing the lien, the value of $925,000 in reduction of the PBGC

claim was lost to the detriment of Williams Farm LLC, Geneva Steel LLC, Holdings Corp. and Iron Ore Mills, LLC.

77.     During the first six months of the bankruptcy case of Geneva Steel LLC attempted to implement a new business plan. The new plan entailed a refinancing of the Term Loan by making an application for a new loan with the ESLGB. Geneva Steel LLC sought a $250 million loan to fund its new business plan. The new business plan involved the construction of an electric arc furnace and conversion of the integrated steel mill into a mini-mill. Under the guaranteed loan program, the prospective borrower (in this case Geneva Steel LLC) required a sponsor lead lender. Geneva Steel LLC chose Duestche Bank as the sponsor. The loan application was pursued in conjunction with Duestche Bank as the lead lender.

78.     Geneva Steel LLC had appraisals of its business and assets made by experts during the first four months of the bankruptcy case. These appraisals indicated that if Geneva Steel LLC were operated as a going concern it had value that would pay all secured creditors and approximately 100% of the unsecured creditors of Geneva Steel LLC. These appraisals also indicated that if liquidated Geneva Steel LLC would have sufficient asset value to pay the secured and unsecured creditors, but not sufficient assets to provide any value to the equity interest of Holdings in Geneva Steel LLC. Upon information and belief, Albert Fried represented to the senior management of Geneva Steel LLC and Garcia that he would work with Geneva Steel LLC so that some, if not all, of his Tranche C Term Loan could be converted to some equity position in the reorganized Debtor as long as Albert Fried & Co. could preserve a substantial portion of its equity position in Holdings.

27

79.     The objective of the initial application to the ESLGB appears to be primarily covered with preserving the existing equity interests and management's equity interest in the Debtors.  Based on communications made during the summer of 2002 and early fall, Albert Fried was or should have been aware that the ESLGB would rule unfavorably on an application which contained the maintenance of existing management, was highly leveraged and contained provision preserving existing equity interest in Holdings  Albert Fried knew or should have known that an application involving the infusion of new equity into Geneva Steel LLC and reduction or elimination of the proposal to maintain existing management (and its proposed equity interests) had a better chance of success before the ESLGB.

80.     Based on communications made by the experts for Duestche Bank to management and communicated to Albert Fried, Albert Fried was also aware during the summer of 2002 and early fall of 2002 that Duestche Bank would not approve the submission of the guaranteed loan application because Duestche Bank's technical and steel industry experts disagreed with many of the major assumptions of Geneva Steel LLC's new business plan.

81.     On or around September 12, 2002 the Board of Directors for Holdings met to consider a recommendation by management that the holding company and its subsidiaries file for bankruptcy.  The Board, including Albert Fried, approved the filing of bankruptcy petitions for Holdings, Williams Farm LLC, Iron Ore Mines LLC, Vineyard Iron Company, Vineyard Management and Cepicor. The purported purpose of filing the petitions was to prevent the imposition of liens against the assets of these entities by the PBGC.  Garcia held a conflict of interest at the time of the foiling of the bankruptcy petitions for Holdings, Williams Farm LLC, Iron Ore Mines LLC, Vineyard Iron Company, Vineyard Management and Cepicor.

28

82.    On September 13, 2002, Holdings, Williams Farm LLC, Iron Ore Mines LLC, Vineyard Iron Company, Vineyard Management and Cepicor filed chapter 11 bankruptcy petitions with the United States Bankruptcy Court for the District of Utah.  Garcia represented each of the entities as counsel for the debtor in possession. At the time of the filing, Holdings and Iron Ore Mines LLC held a claim against Williams Farm, yet the claims were not disclosed in the schedules and statements of financial affairs.   Garcia failed to disclose his relationships with Albert Fried & Co. in any of the papers filed with the bankruptcy court on behalf of Holdings, Williams Farm LLC, Iron Ore Mines LLC, Vineyard Iron Company, Vineyard Management and Cepicor.

83.    On or around October 22, 2002 Ken C. Johnsen advised the Board of Holdings that Duestche Bank had notified the company that it would not submit a guaranteed loan application on behalf of the operating company, Geneva Steel LLC.  The reasons given for Duestche Bank's refusal were: (i) Geneva Steel LLC had failed to pursue any alternative business plan involving the active participation of the unsecured creditor committee and the infusion of new equity into the Debtors, and (ii) the Debtors failed to preserve the option to maintain their ability to reopen the steel mill as an operating steel mill and the Debtors failed to provide a mechanism whereby the unsecured creditors of Geneva Steel LLC could preserve 100% of their claims. By December 2002 it was clear that no bank would submit a loan application for a U.S. guaranteed loan based on Geneva Steel LLC's new business plan.  Albert Fried breached his duty to the creditors of Geneva Steel LLC by failing to take such actions to preserve the value of its assets for the benefit of the unsecured creditors thereof and by placing his personal interests and the interests of Albert Fried & Co. before the interests of the creditors.

84.     On or around January 9, 2003, Albert Fried resigned from the board of directors of Holdings.  Shortly thereafter, Geneva Steel LLC began the process of an orderly liquidation of its assets.  On or around February 4, 2003 a motion was filed by Geneva Steel LLC with the Bankruptcy Court to allow Geneva Steel LLC to begin the process of selling its assets.  (Docket #396)  Also, Geneva Steel LLC began interviewing real estate brokers, auctioneers, and other professionals to begin the process of selling Geneva Steel LLC's assets.  Although he was no longer a member of the Board of Directors, Garcia and Ken C. Johnsen regularly communicated with Defendant Al Fried on the status of the conduct of the Debtors' liquidation of the Debtors' assets.  Defendant Al Fried continued to have control and direction over the process of liquidation of the Debtors' assets in his capacity as an insider and a person in control of the Debtors during the initial stages of the liquidation.

85.     On or around February 20, 2003 Steelman, Inc. entered into a consulting agreement with Ken C. Johnsen and Joe Cannon.  Joe Cannon was the Chairman of the board of Directors of Holdings  The consulting agreement provides Ken C. Johnsen and Joe Cannon with a percentage of the net sales price of the sale of the Williams Farm Property.  Ken C. Johnsen and other employees of the Geneva Steel LLC performed services on behalf of Steelman, Inc. for the development of the Williams Farm Property from February 20, 2003 through April 15, 2005 without compensation to Geneva Steel LLC for those services rendered.  The consulting agreement was apparently signed on or around March 11, 2003, effective February 20, 2003.

86.     Development of the Williams Farm Property is directly related to the development of Geneva Steel LLC's real property and the nature of the development of Geneva

Steel LLC's real property will have an effect on the ultimate development of the Williams Farm Property and vice versa.

87.     Bills for legal services for work that benefit solely Defendant Steelman, Inc. and Defendants were sent to Geneva Steel LLC for payment and were paid by Geneva Steel LLC. Defendants Steelman, Inc. and Al Fried unjustly benefited from those services.

88.     On or around March 13, 2003, Steelman, Inc. engaged Gardner & Associates (hereafter "Gardner") as the consultant to assist in the development of the Williams Farm Property.  Many of the duties of Gardner were the same as the duties of Ken C. Johnsen and Joe Cannon under the consulting agreement with Ken C. Johnsen and/or Joe Cannon.  Written communications were made wherein Ken C. Johnsen and Joe Cannon were designated as "Fried's local representatives."

89.     Beginning on or around March 14, 2003 Steelman, Inc. began the redevelopment process of the Williams Farm Property by offering to sell certain parcels on the Williams Farm Property to the City of Orem in exchange for certain redevelopment rights and rezoning of the property.  Part of the offer was to allow the Williams Farm Property to be developed for residential purposes, which would not likely be approved by the City of Orem if the Geneva Steel mill plant continued in operation since residences could not be built in the neighborhood of heavy manufacturing facility.  This proposal presented a conflict to the management of Geneva Steel LLC and Holdings Corp as they considered proposals to restart the steel mill.  Albert Fried & Co.'s ability to vote as a lender on the approval of liquidation of Geneva Steel LLC's assets conflicted with Steelman Inc.'s interests in developing the Williams Farm Property.

90.     At the time of the proposed development of the Williams Farm Property, "Fried's local representative", Ken C. Johnsen, had confidential and inside information pertaining to the proposed development of the Geneva Steel mill site.  In particular, Ken C. Johnsen and Joe Cannon were aware of internal evaluations of the demolition and remediation of the steel mill site, information on the issues relating to wetlands designations on the Geneva Steel mill site and the Williams Farm Property site, sensitive negotiations on the sale of Geneva Steel LLC's property near the Williams Farm Property, critical discussions and evaluations relating to the sale of banked emissions credits owned by the Debtors, and engineering information on infrastructure needs and development of the entire area around the Geneva Steel mill site, including the Williams Farm Property.

91.     During the months of March, April and May 2003, Defendant Al Fried had numerous conversations with Garcia and Ken C. Johnsen regarding the issues of employee retention of Geneva Steel, including an incentive contract for Ken C. Johnsen.  Defendant Al Fried approved an employee retention plan that included an incentive compensation package for Ken C. Johnsen that contemplated the liquidation of the Geneva Steel mill site and redevelopment of the site for mixed-use purposes.  The incentive compensation package arranged by Al Fried for Ken C. Johnsen also worked for the benefit of the ultimate development of the Williams Farm Property as residential.  Residential development of the Williams Farm Property would have greater value than development for industrial purposes.  On or after March 26, 2003, Al Fried encouraged the secured creditors of Geneva Steel to approve the incentive package for Ken C. Johnsen and upon information and belief voted in favor of the incentive compensation.

92.     During much of spring 2003, employees and officers of Geneva Steel continued to represent the interests of Steelman, Inc. before the county and City of Orem.  Further, the offices of Geneva Steel were used for meetings with government representatives.  Geneva Steel telephones and computers were used for Steelman, Inc. company business the supplies and postage of Geneva Steel were used for mailings of Steelman, Inc. and other assets of the Debtors were used to support the rezoning efforts of Steelman, Inc. on the Williams Farm Property.

93.     During 2003, Ken C. Johnsen and Joe Cannon were "Fried's local representatives" with respect to the communications and contacts with the City of Orem and County of Utah.  Defendant Ken C. Johnsen was also the President and CEO of Geneva Steel LLC, a chapter 11 debtor in possession during 2003.  Albert Fried & Co. was a secured creditor of Geneva Steel LLC during 2003.  During 2003 Albert Fried participated in numerous telephone conferences and in-person conferences with representatives of Geneva Steel LLC and representatives of other secured creditors regarding Geneva Steel LLC's proposed plans of reorganization and liquidation.  At no time during those meetings and conferences was it ever disclosed by either Ken C. Johnsen or Albert Fried that Mr. Johnsen was "Fried's local representative" with respect to communications and contacts with the City of Orem and County of Utah.  During spring 2003, Ken C. Johnsen, Joe Cannon and David Gardner engaged the services of local architects and planners to prepare preliminary land use planning documents for the development of the Williams Farm Property.

94.     On June 13, 2003, Garcia, attorney for Debtor, provided Albert Fried with an opinion letter regarding the effect of the allocation of payments on Albert Fried & Co.'s loan with debtor in possession and Albert Fried & Co.'s potential claim against the other secured

creditors of Geneva Steel LLC.  Neither Garcia nor Albert Fried ever disclosed to the other

secured creditors of Geneva Steel LLC that Garcia, counsel for Geneva Steel LLC, was also

representing Albert Fried with respect to allocation of payments on secured creditors loans and

potential claims that Albert Fried might assert against those other secured creditors.

95.     Upon information and belief on or around June 16, 2003, Garcia shared with

Albert Fried certain information pertaining to the filing of an application of a loan with the

Emergency Steel Loan Guaranty Board that was not shared with the other secured creditors of

Geneva Steel LLC.  This loan application was being made by a potential buyer of assets from

Geneva Steel LLC, Western Pacific Steel Co., a to be formed corporation composed of partners,

Citigroup Venture Capital ("CVC") and the Creamer Group.  One of the principals in the

Creamer Group was Joe Cannon, chairman of the board of Debtor Holdings.

96.     On or around June 26, 2003 Albert Fried faxed to Garcia a copy of a confidential

letter agreement between the secured lenders regarding the proposed retention plan for officers

of Geneva Steel LLC, including its President and CEO, Ken C. Johnsen.  The letter contained the

position of the secured creditors on the negotiations with Ken C. Johnsen on his incentive

compensation for the liquidation of assets of Geneva Steel LLC.  Upon information and belief,

that information was then provided by Garcia to Ken C. Johnsen.  On or around June 27, 2003,

Garcia, on behalf of Ken C. Johnsen provided an offer to the secured creditors relating to the

incentive compensation of Ken C. Johnsen pursuant to a new employment agreement.

97.     On or around June 29, 2003, with Albert Fried's approval and consent, Ken C.

Johnsen and Joe Cannon presented to the City of Orem a Planned Development Submittal for a

preliminary plan for an 140-acre proposed ballpark district site located at 1600 N. Geneva Rd,

Orem, Utah. This plan included the approximate 76 acres of the Williams Farm Property. Albert Fried authorized Ken C. Johnsen, Joe Cannon and David Gardner to make offers to third parties on other property owned by those third parties within the proposed ballpark district site. Approval of the plan depended in part on the ultimate development of the Geneva Steel mill site. The Orem planning commission and city council's approval of residential development on the Williams Farm Property was dependent on the ultimate development of the Geneva Steel mill site for other than solely industrial purposes. Revitalization of the Geneva Steel mill site as an operating steel mill was in direct conflict with the proposed development of the Williams Farm Property for residential purposes. On or around July 2, 2003, Albert Fried received a letter from his "local representative", Ken C. Johnsen, enclosing the Planned Development Submittal prepared for Williams Farm. The Planned Development Submittal contained maps, charts, and data indicating the general nature of the neighborhood, including the Geneva Steel mill site located immediately across the street from the Williams Farm Property. Albert Fried was or should have been aware of the conflict of interest held by his "local representatives", Ken C. Johnsen, and Joe Cannon given their positions as the President, CEO and Chairmen of the Board of the Holdings. In the July 2, 2003 letter, "Fried's local representative", Ken C. Johnsen advised Albert Fried that the plan had received favorable initial reaction from the City of Orem.

98.     On or around July 13, 2003 Geneva Steel LLC filed an application of Geneva Steel LLC for an order authorizing and approving second amended employee retention program including employment agreement with Ken C. Johnsen. The employment agreement with Ken C. Johnsen contained the incentive compensation package that provided Ken C. Johnsen with a commission on the net sale proceeds of the liquidation of Debtor's assets. Ken C. Johnsen

requested that Albert Fried support the application before the Bankruptcy Court.  After some

modifications to the original employment agreement, the secured lenders, including Albert Fried

did support the application, including the employment agreement of Ken C. Johnsen.

99.     On or around July 22, 2003, Albert Fried on behalf of Steelman, Inc. issued a

letter to the City of Orem indicating that his official contact for purposes of the rezoning and

development plan was Joe Cannon at 10 Geneva Road, Vineyard, Utah.

100.     On or around July 28, 2003, Steelman LLC made an offer to purchase 19 acres of

land of the neighbor to the north of the Williams Farm Property for approximately $3.2 million.

Albert Fried authorized and consented to the offer.

101.     On or around August 7, 2003 Albert Fried consulted with Garcia on the

preservation of his equity interest in Holdings.  Upon information and belief, Garcia, counsel for

Geneva Steel LLC, provided legal advise to Albert Fried on the "new value" principle and its

application in a plan of reorganization. Also, during the month of August 2003, Albert Fried had

numerous telephone conversations with Garcia and Ken C. Johnsen regarding the retention

program and the employment agreement for Ken C. Johnsen.

102.     In fall of 2003 a consultant for Geneva Steel LLC, Wickstrom & Associates

prepared an economic analysis of the value of the real property of the Geneva Steel mill site.

The report indicated that the market for real property located in Vineyard, Orem, and Provo,

Utah.  Further the report indicated that the real property comprising the Geneva Steel mill site

had a value in excess of approximately $100 million after environmental remediation.  The

contents of the report were shared by Ken C. Johnsen and Garcia with  Albert Fried shortly after

the report was completed.  The contents of the report were not made public generally.

103.    On or around October 24, 2003, DR Horton made an offer to purchase 42 acres in the Williams Farm Property for $200,000 per acre.  The offer was first received by "Fried's local representative", Ken C. Johnsen and then forwarded to Albert Fried for his review and approval. One condition of the offer was regaining parts of the Williams Farm Property for residual purposes.

104.    In late September and early October 2003 a number of telephone conferences were held between a local Utah County, Utah real estate developer, David Gardner (hereafter "Gardner"), and Fried, Garcia, Johnsen, and Frank McInnis (hereafter "McInnis").  During these conferences with Garcia, Fried, Gardner, and McInnis, a preliminary agreement was reached between the parties for the investment in and development of real property located in Provo, Utah known as the Trellis on the Green development.  On or around October 1, 2003 McInnis resigned from the Board of Directors of Holdings.  There was no disclosure to the Board of Directors by Albert Fried or anyone else regarding the potential conflict now existing between Fried, Cannon, McInnis and Johnsen for and on account of the Trellis on the Green development. Albert Fried knew or should have known of thee conflicts of interest.  Ken C. Johnsen was granted his interest in the development in exchange for services to be rendered to the venture.

105.    The Steelman Realty, LLC Company Agreement lists as its members Joe Cannon, Ken C. Johnsen, Steve Garcia, David Gardner, Al Fried, and Frank McInnis.  Joe Cannon, Ken C. Johnsen, and Dave Gardner received their membership interests for in-kind contributions. Ken C. Johnsen was appointed by the members as CEO and manager of Steelman Realty, LLC.

106.    Counsel for Geneva Steel LLC, Garcia apparently prepared and then emailed the incorporation documents for Steelman Realty, LLC to Al Fried, Ken C. Johnsen and David

Gardner. Albert Fried Jr., Christina Fried and Ken Johnsen were appointed to the board of

managers of the company, by the unanimous written consent in lieu of first meeting of members

of Steelman Realty, LLC.

107.    On or around December 29, 2003 Steelman Realty, LLC closed the purchase of

the Villa property located in Provo, Utah.  The Villa property is located approximately six miles

from the Geneva Steel mill site.

108.    In early 2004, Albert Fried & Co. made a joint proposal with Silver Point Capital

to purchase the assets of Geneva Steel LLC.  The offer was made by Albert Fried & Co. with

confidential information that had been provided to it by Ken C. Johnsen and Garcia.  The offer

was for approximately $100 million even though the liquidation value of the assets was

approximately $175 million as determined by the internal and external appraisals and evaluations

prepared for Geneva Steel LLC and shared with Albert Fried & Co.

109.    Ken C. Johnsen had numerous conversations with Albert Fried during the months

of March, April and May 2004.  Ken C. Johnsen shared with Albert Fried information pertaining

to the value of Debtor's assets that was not public knowledge.  Based on the information

provided by Ken C. Johnsen, Albert Fried proposed to Garcia and Ken C. Johnsen a stand-alone

plan of reorganization that was ultimately accepted by the Geneva Steel LLC. At the time of the

proposal of the plan of reorganization, the value of the assets of Geneva Steel LLC exceeded the

amount owed to the secured creditors of Geneva Steel LLC and if properly liquidated there

would be a dividend to the unsecureds. Thus, at the time, it would have been appropriate for the

unsecured creditors committee to work with the Geneva Steel LLC and Albert Fried & Co. in

determining the appropriate plan of reorganization.  Albert Fried insisted to Ken C. Johnsen and

Garcia that the unsecured creditor committee be kept "out of the loop" on information pertaining

to the various plans proposed by Albert Fried & Co. and other third parties interested in

acquiring the assets of Geneva Steel LLC.

110.    In April 2004 Steelman, Inc. received an offer to purchase the Williams Farm

Property from DH Horton for $6.5 million.  Ken C. Johnsen assisted in the negotiations of the

terms of the contract.  While Ken C. Johnsen shared the information pertaining to the value of

the Williams Farm Property (approximately $85,000 per acre) with Albert Fried & Co. (a

secured creditor of Geneva Steel LLC) he withheld that information from the other creditors of

the Geneva Steel LLC.  The information was pertinent to the valuation of the Geneva Steel mill

site because if the Geneva Steel mill site had a value for approximately the same amount per

acre, Geneva Steel LLC's real property would have a gross value of approximately $100 million

and a net value of approximately $85 million after remediation costs attributable to Geneva Steel

LLC.  Since Geneva Steel LLC also held valuable water rights (with an appraised value of

approximately $92 million), valuable emissions credits (with an appraised value of

approximately $20 million), and current sales for the machinery and equipment and scrap (of

approximately $60 million), the total value of Geneva Steel LLC's assets was over $200 million.

Nevertheless, and without any apparent disclosure to the other creditors of those asset values,

Albert Fried & Co., Ken C. Johnsen and Garcia engaged in a plan to take control of the assets of

Geneva Steel LLC for significantly less then the above stated values thereby greatly benefiting

Albert Fried & co. to the substantial detriment of other creditors.

111.    During the late spring of 2004 and early summer of 2004, Albert Fried, Ken C.

Johnsen and Garcia developed a plan of reorganization incorporating the concept of a liquidating

limited liability company that would survive Geneva Steel LLC and in which the Geneva Steel's

assets would be deposited.  The membership interests in the limited liability company would be

owned by management, principally Ken C. Johnsen, Albert Fried & Co. and a small percentage

reserved for the unsecured creditors of the Geneva Steel LLC.  The limited liability company

would be managed by a board of managers which would be controlled by Albert Fried & Co.

With the inside knowledge held by Ken C. Johnsen, Garcia and Albert Fried that the value of the

assets of Geneva Steel LLC was far in excess of the amount of the secured claims against those

assets, and with the knowledge of potential sales transactions that would pay off Albert Fried &

Co.'s debt in full, Albert Fried continued to insist that any plan proposed by Geneva Steel LLC

provide Albert Fried & Co. an inordinately high interest rate and control over the liquidating

limited liability company.  Because the plan would not be confirmed by the Bankruptcy Court if

the inside information on the values of assets were known to the creditor body at large, Albert

Fried, Ken C. Johnsen and Garcia agreed to contain the dissemination of the actual values within

their exclusive control.

112.    During early summer 2004, Ken C. Johnsen was presented with several proposed

contracts on Geneva Steel LLC's real property.  Pursuant to the informal agreement between

Ken C. Johnsen, Garcia, and Albert Fried, information regarding proposed asset sales for more

than the amounts owing to secured creditors were discouraged by Ken C. Johnsen.  Albert Fried

was aware of offers to Geneva Steel LLC that were turned down by Ken C. Johnsen that would

have paid the secured creditors, including Albert Fried & Co. in full and would have provided for

some return to the unsecured creditors in a bulk sale of Geneva Steel LLC's assets.  Also, Albert

Fried was aware that the offers were based on valuations of the water rights of Geneva Steel

LLC that were approximately $50 million to $70 million less than the appraised value.  If the true value of the water rights had been made known to the potential purchasers, the amount of the purchase price of the proposed acquisitions may have provided a substantial return to unsecured creditors.

113.     During the summer of 2004 negotiations occurred between members of Debtor's management, including Ken C. Johnsen and various third parties for the purchase of Geneva Steel LLC's water rights.  Albert Fried was informed by Ken C. Johnsen and Garcia of the potential value of the water rights in the range between $75 million and $100 million.  The negotiations were deliberately kept confidential to prevent the unsecured creditors of Geneva Steel LLC from learning the true potential value of the water rights.  However, Albert Fried was made privy to the information pertaining to the water rights.  Further, since Albert Fried continued to receive offers from third parties on the Williams Farm Property, he was privy to information regarding the ultimate value of the Geneva Steel LLC's assets, and that the value far exceeded the claims of the secured creditors, including the claim of Albert Fried & Co.

114.     On or around August 19, 2004 Debtor filed a Motion for Entry of Order Approving a Preconfirmation Distribution to the Secured Lenders (Docket #1149).  Albert Fried & Co. was one of the Secured Lenders specifically mentioned in the Motion.  During September 2004, Garcia provided legal advise and assistance to Albert Fried & Co. on the issue of the allocation of payments on the secured creditors' loans and payment of the three percent (3%) payment to Albert Fried & Co. on the Tranche C loan.  At the time, Garcia was legal counsel for the Geneva Steel LLC, Holdings, Iron Ore Mines LLC, and Williams Farm LLC.  Albert Fried &

Co. then filed a pleading requesting that the payments be allocated in a specific manner most favorable to Albert Fried & Co.

115.     On or around September 1, 2004 Williams Farm LLC filed a motion to dismiss its chapter 11 bankruptcy case.

116.     On or around September 14, 2004 the Court entered an order requiring Geneva Steel LLC to file a disclosure statement and plan within ten days and allow any other interested party ten days thereafter to file competing disclosure statements and plans.  Because of this order, Albert Fried & Co., Ken C. Johnsen and Garcia entered into an informal agreement to propose a plan of reorganization that would allow Albert Fried & Co. to maintain control over the liquidation of Geneva Steel LLC's assets.

117.     By mid October 2004 Albert Fried knew or should have known that the Williams Farm Property development and the development of the Geneva Steel mill site were interrelated and that local government planning and zoning commissions and boards would require the Geneva Steel mill site to be decided before the Williams Farm Property could be developed.

118.     During September and early October 2004 Geneva Steel LLC through Johnsen and Garcia proposed several plans of reorganization to the secured and unsecured creditors.  The plans provided for the reservation of interests by management, particularly Johnsen and allowed control over the liquidating limited liability company by Albert Fried.  Also, the plans proposed to establish a liquidating limited liability company ("Liquidating LLC") as the vehicle for future liquidations of assets of Geneva Steel LLC.

119.     On or around October 22, 2004 Ken C. Johnsen, Garcia, and Fried entered into a secret agreement relating to the proposed plan of reorganization.  The arrangement guaranteed to

42

Fried a 27% return on his secured debt and a large portion of the equity in the liquidating limited liability company. Furthermore, the proposed secret arrangement guaranteed Fried management control of the liquidating limited liability company. At the same time, Johnsen instructed Garcia to represent to the Creditors Committee that the Creditors Committee and Fried would share management control of the liquidating limited liability company.

120.    On October 25, 2004 at the behest of Garcia and Albert Fried, Ken C. Johnsen presented to the Board of Directors of Holdings the plan of reorganization that had been agreed upon by Garcia, Johnsen, and Fried (hereafter the "Fried Plan"). Without sufficient time to review the proposed Fried Plan, the Board of Directors of Holdings approved the filing of the Fried Plan. The Fried Plan was presented as the best plan that could be offered by Geneva Steel LLC, even though Albert Fried knew or should have known that the Fried Plan was intended to unfairly benefit Fried at the substantial detriment of the unsecured creditors.

121.    On or around December 28, 2004, at the request of Albert Fried, Garcia prepared the organization documents of Trellis on the Green, LLC (hereafter "Trellis"), a real estate development company. Shortly thereafter, the organizers, including Albert Fried, signed the organizational documents.

122.    On or around December 28, 2004, at the request of Albert Fried, Garcia organized Vineyard Investment Company ("VIC"). VIC was organized to assume the position of Albert Fried & Co. under the plan of reorganization proposed by Fried and Geneva Steel LLC.

123.    On January 28, 2005 at the request of Garcia and Albert Fried, Johnsen recommended to the Board of Directors of Holdings that it file Geneva Steel LLC, SPC and Fried plan (hereafter called the "Joint Plan."). Garcia was authorized to file the Joint Plan.

43

124.    At the request of Garcia and Albert Fried, Ken C. Johnsen manipulated the plan negotiation, preparation, and filing process so that the Joint Plan would be filed and have the best likelihood of approval.

125.    Holdings as the sole member of Williams Farm LLC has a right, among other things, to bring the claims herein derivatively on behalf of Williams Farm LLC.

126.    Pursuant to the provisions of 11 U.S.C. § 544, Trustee has as of the commencement of the Debtors' cases, without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, and may avoid any transfer of property belonging to any one of the Debtors..

127.    Pursuant to the provisions of 11 U.S.C. § 544, Trustee has as of the commencement of the Debtors' case, without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, and may avoid any transfer of property of the Debtors and to recover fraudulent transfers as a creditor of Holdings, Williams Farm LLC, and Iron Ore Mines LLC.

128.    Pursuant to the provisions of 11 U.S.C. § 544, Trustee has as of the commencement of the Debtors, the rights of creditors and bona fide purchasers of each of the Debtors under 11 U.S.C. § 544(a)(1), (2) and (3).

129.    The United States is a creditor of each of the Debtors, specifically the PBGC is a creditor of each estate.

130.    Pursuant to the provisions of 11 U.S.C. § 548, the trustee may avoid any transfer or an interest of the Debtor(s) in property, or any obligation incurred by the Debtor(s), that was may or incurred on or within one-year before the date of the filing of each of the petitions herein,

if the Debtor(s) voluntarily or involuntarily: (a) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the Debtor(s) was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (b) received less then reasonably equivalent value in exchange for such transfer or obligation and was either: (i) insolvent on the day that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor(s) was an unreasonably small capital; or (iii) intended to incur or believe that the Debtor(s) would incur, debts that would be beyond the Debtor(s)' ability to pay as such debts matured.

131.    Part of the payments made to Albert Fried & Co. during the Geneva Steel LLC case have been for interest and costs.  The interest and costs paid are unreasonable and not allowed under 11 U.S.C. § 506(a) and (b).  The interest and fees paid to Albert Fried & Co. were not disclosed to the creditors and were not disclosed to the Bankruptcy Court.  The interest and fees paid to Albert Fried & co. were not allowed under the provisions of the Bankruptcy Code. Albert Fried & Co. is obligated to the Debtors and the Debtors' estate to return all interest, costs, and fees that are disallowed under the provisions of the Bankruptcy Code.

## II.  FIRST CLAIM FOR RELIEF- DETERMINATION OF SECURED CLAIM AND DECLARATORY JUDGMENT ON CLAIM OF ALBERT FRIED & CO AND ACCOUNTING FOR PAYMENTS ON SECURED CLAIM

132.    Plaintiff hereby incorporates by this reference all of the allegations contained in paragraphs 1 through 131 above as if set forth fully herein.

133.    An actual controversy has arisen and now exits between Plaintiff and Albert Fried & Co. regarding the secured claim of Albert Fried & Co.

134.    Plaintiff is entitled to a full accounting of the allocation of all amounts paid to Albert Fried & Co. before and during the bankruptcy case of Geneva Steel LLC. Plaintiff desires a judicial determination of Debtor's obligation, if any to pay the claim of Albert Fried & Co. and a declaration as to the position of Plaintiff based on the facts and circumstances described in the preliminary statement of facts.

135.    A judicial declaration is necessary and appropriate at this time under all of the circumstances so that Plaintiff may determine what rights, if any, Albert Fried & Co. has as a purported secured creditor of Geneva Steel LLC.

136.    28 U.S.C. § 2201 provides that any court of the United States may render a declaratory judgment on a status or transaction otherwise coming within the jurisdiction of the courts of the United States. The within action involves a dispute arising out of the bankruptcy proceedings of Debtors and the administration of cases in bankruptcy proceedings. 11 U.S.C. §§ 502 and 506 provides that the Court can determine the allowance of a claim and a determination of the secured status of a creditor.

137.    Plaintiff is entitled to a full accounting of the claim asserted by Albert Fried & Co. for all payments made on the claim.

138.    Plaintiff is entitled to an order requiring Albert Fried & Co. to repay the estates for all principal, interest and attorney fees wrongfully paid by the Debtors to Albert Fried & Co.

139.    This case between Geneva Steel LLC and Albert Fried & Co. involves a controversy in an amount of at least $15 million.

46

140.   Plaintiff is entitled to a declaratory judgment in its favor and against the Albert Fried & Co. determining the amount of the Defendant's claim and the security therefore. Plaintiff is entitled to recovery of all interests, fees, and costs disallowed under the provisions of the Bankruptcy Code.

## III.  SECOND CLAIM FOR RELIEF FOR MONETARY DAMAGES FOR BREACH OF DUTY OF CARE AGAINST ALBERT FRIED

141.   Plaintiff hereby incorporates by this reference all of the allegations contained in paragraphs 1 through 140 above as if set forth fully herein.

142.   As a director of Geneva Steel LLC and Holdings from their inception until January 2003, Albert Fried owed to these Debtors a duty of care. The duty of care required Albert Fried to exercise sound business judgment, in good faith, with the care of an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner reasonably believed to be in the best interest of these Debtors.

143.   Albert Fried breached his duty of care to the Debtors by failing to act in good faith and with the care of an ordinarily prudent person in a like position.  The wrongful conduct of the Albert Fried includes, but is not limited to the following:

(a)  Albert Fried failed to supervise the officers of these Debtors and allowed Ken C. Johnsen to commit acts violating his duties to these Debtors, including but not limited to Ken C. Johnsen's tactics of hiding offers to purchase the operating company and/or its assets for the highest and best amounts that were available at the time and by allowing Ken C. Johnsen to promote bids and offers that were less than better offers;

(b)  Albert Fried failed to prevent these Debtors from wasting corporate assets;

47

(c)  Albert Fried failed to enforce corporate governance procedures, audit and compensation policies of the Debtors thereby allowing the compensation of Ken C. Johnsen to exceed any reasonable amount.

144.    These Debtors have been damaged by the breach of duty of care by Albert Fried.

145.    Plaintiff is entitled to judgment in its favor and against the Albert Fried for all damages caused to these Debtors by Albert Fried's breach of the duty of care in an amount yet undetermined but to be determined at the time of trial.

## IV.  THIRD CLAIM FOR RELIEF – FOR MONETARY DAMAGES FOR BREACH OF THE DUTY OF LOYALTY AGAINST ALBERT FRIED

146.    Plaintiff hereby incorporates by this reference all of the allegations contained in paragraphs 1 through 145 above as if set forth fully herein.

147.    Albert Fried had a duty of loyalty to the Debtors.  That duty included, but is not limited to, the duty to disclose all conflicts of interest that might affect Albert Fried's duties and responsibilities to Holdings as a director thereof.

148.    Albert Fried's duty of loyalty required complete candor and disclosure of all relevant information relating to the Williams Farm Property, Trellis on the Green, the claim of Albert Fried & Co. against Debtor and other transactions in which he was involved with third parties, including Garcia, Cannon and Johnsen.

149.    Albert Fried breached his duty of loyalty to Debtors by failing to disclose the relevant information relating Williams Farm Property, Trellis on the Green, and other transactions in which he was involved with third parties, including Garcia, Cannon and Johnsen.

150.    Debtors have been damaged by Albert Fried's breach of the duty of loyalty in an amount to be determined at the time of trial of this matter.

48

## V.  FOURTH CLAIM FOR RELIEF – FOR MONETARY DAMAGES FOR BREACH OF FIDUCIARY DUTIES AGAINST ALBERT FRIED

151.    Plaintiff hereby incorporates by this reference all of the allegations contained in paragraphs 1 through 150 above as if set forth fully herein.

152.    At all times pertinent hereto, Debtor Geneva Steel LLC was insolvent or in the zone of insolvency as it was unable to pay its obligations as the same came due and because Geneva Steel LLC's liabilities exceeded the fair value of its assets.

153.    Since Geneva Steel LLC was insolvent, Albert Fried as a director and officer of Debtor Geneva Steel LLC is deemed to be a trustee for it and for its creditors.

154.    Among the duties owed by Albert Fried were the duties to Debtors to not commit waste or mismanagement that result in damage to Geneva Steel LLC.

155.    Albert Fried also had responsibility to assure that Geneva Steel LLC's assets were not diverted from Geneva Steel LLC to the detriment of creditors of Geneva Steel LLC.  This included the duty to prevent diversion of assets.

156.    Albert Fried's duties include the duty to avoid conflict of interest transactions and the duty to put the interests of Geneva Steel LLC before the personal interests of Albert Fried or his company Albert Fried & Co.

157.    Albert Fried was a fiduciary for the benefit of Geneva Steel LLC and its creditors.

158.    Albert Fried breached his fiduciary duties to Geneva Steel LLC and their creditors by engaging in transactions that put his personal interests and the interests of Albert Fried & Co. before the interests of Geneva Steel LLC and their creditors.

159.    Albert Fried breached his fiduciary duties to Geneva Steel LLC and its creditors by failing to disclose his personal interests in Williams Farm, Steelman, Inc., Steelman Realty, LLC, and Trellis on the Green.

160.    Albert Fried breached his fiduciary duties to Geneva Steel LLC by failing to avoid conflict of interest transactions with respect to Geneva Steel LLC. Albert Fried put the interests of Albert Fried & Co. above other creditors. By demanding and then allowing the transfer of the Williams Farm Property to Steelman, Inc., Albert Fried breached his fiduciary duties to treat all creditors of Geneva Steel LLC in a fair manner.

161.    Albert Fried breached his fiduciary duties to Geneva Steel LLC and creditors by engaging in transactions that resulted in a diversion of assets from Geneva Steel LLC to third parties at the expense of the Debtors.

162.    Albert Fried breached his fiduciary duties to Geneva Steel LLC and creditors by allowing the statute of limitations on claims that the estate could have pursued against Albert Fried & Co. and Steelman, Inc. to run without commencing or having legal counsel for Geneva Steel LLC commence actions against Albert Fried & Co. and Steelman, Inc.

163.    Albert Fried breached his fiduciary duties to Geneva Steel LLC and creditors by failing to authorize counsel for Geneva Steel LLC to bring preference actions against Albert Fried & Co. to recovery potential voidable preferences made by Geneva Steel LLC to Albert Fried & Co.

164.    Geneva Steel LLC and their creditors have been damaged by the breach of fiduciary duties by Albert Fried.

50

165.    Plaintiff is entitled to a judgment for damages against Albert Fried for the breach

of fiduciary duties in an amount to be determined at the time of trial.

## VI.  FIFTH CLAIM FOR RELIEF AGAINST ALBERT FRIED & CO. – EQUITABLE SUBORDINATION OF THE CLAIM OF ALBERT FRIED & CO. TO THE OTHER CREDITORS AND ADMINISTRATIVE CREDITORS OF DEBTORS, GENEVA STEEL LLC AND HOLDINGS

166.    Plaintiff hereby incorporates by this reference all of the allegations contained in

paragraphs 1 through 165 above as if set forth fully herein.

167.    The actions of Albert Fried & Co. constitute inequitable conduct.  Albert Fried

attempted and did take actual control over the business and affairs of Debtor Geneva Steel LLC

with the intent to obtain control over its assets and the bankruptcy process of Debtor Geneva

Steel LLC.  Albert Fried's actions were intended to provide recovery for Albert Fried & Co. to

the detriment of the other creditors of Debtor Geneva Steel LLC.

168.    The conduct engaged in by Albert Fried & Co., through its principal and agent,

Albert Fried, has resulted in injury to the other creditors of Geneva Steel LLC and Holdings and

have conferred an unfair advantage on the Albert Fried & Co.

169.    Equitable subordination of Albert Fried & Co.'s claim against Geneva Steel LLC

is not inconsistent with any other provision of the Bankruptcy Code.

170.    Albert Fried & Co. and its agent Albert Fried engaged in conduct that was

unlawful and illegal.

171.    Albert Fried & Co. used Debtor Geneva Steel LLC as an instrumentality or alter

ego of Albert Fried & Co. with the attempt to obtain the assets of Debtor Geneva Steel LLC for

the sole benefit of Albert Fried & Co. to the detriment of the other creditors.

172.    The claim of Albert Fried & Co. should be equitably subordinated to the claims of the other creditors of Debtor Geneva Steel LLC.

173.    Plaintiffs are entitled to a declaration, decree and order that the claim of Albert Fried & Co. is equitably subordinated to the claims of the other creditors of Debtor Geneva Steel LLC.

174.    Plaintiffs are entitled to a judgment and decree awarding Plaintiffs a return of all payments made to Albert Fried & Co. for principal, interest and attorneys fees paid to the extent that Albert Fried & Co.'s claim is equitably subordinated to the claims of other parties in interest in Geneva Steel LLC's bankruptcy case.

## VII.  SIXTH CLAIM FOR RELIEF - WILLIAMS FARM LLC CLAIM AGAINST STEELMAN, INC. AND CLAIM FOR RELIEF AGAINST ALBERT FRIED & CO. – DECLARATION OF THE INVALIDITY OF THE GRANT OF THE OPTION ON THE WILLIAMS FARM PROPERTY FOR LACK OF CORPORATE AUTHORITY

175.    Plaintiff hereby incorporates by this reference all of the allegations contained in paragraphs 1 through 174 above as if set forth fully herein.

176.    The Board of Managers of Williams Farm LLC never approved the grant of the Williams Farm Option.

177.    The Board of Managers of Williams Farm LLC never approved the assignment of the Williams Farm Option from Albert Fried & Co. to Defendant Steelman, Inc.

178.    The Board of Managers of Williams Farm LLC never approved the sale and transfer of the Williams Farm Property to Albert Fried & Co. and Defendant Steelman, Inc.

179.    Ken C. Johnsen was not an manager or officer of Williams Farm LLC and lacked the authority to sign and execute the Williams Farm Option.

180.    Steve Bunker was not a manager or officer of Williams Farm LLC and lacked the authority to sign the deed from Williams Farm LLC to Defendant Steelman, Inc.

181.    Plaintiffs are entitled to an order, decree, and declaration that the transfer of the Williams Farm Property to Albert Fried & Co. and Defendant Steelman, Inc. was without proper authority from the Board of Managers of Williams Farm LLC and is void and of no effect.

## VIII.   SEVENTH CLAIM FOR RELIEF  OF WILLIAMS FARM LLC  AGAINST ALBERT FRIED & CO. AND STEELMAN, INC. – DECLARATION OF THE INVALIDITY OF THE GRANT OF THE OPTION ON THE WILLIAMS FARM PROPERTY FOR LACK OF CONSIDERATION

182.    Plaintiff hereby incorporates by this reference all of the allegations contained in paragraphs 1 through 181 above as if set forth fully herein.

183.    Defendants Albert Fried & Co. and Steelman, Inc. never provided any consideration for the grant of the Williams Farm Option.

184.    Defendants Albert Fried & Co. and Steelman, Inc. never provided any consideration for the exercise of the Williams Farm Option and the transfer of the Williams Farm from Williams Farm LLC to Defendant Steelman, Inc.

185.    Plaintiffs are entitled to an order, decree, and declaration that the transfer of the Williams Farm Property to Albert Fried & Co. and Defendant Steelman, Inc. was without consideration and therefore the transfer should be delivered and void of no effect.

## IX.   EIGHTH CLAIM FOR RELIEF – ALTERNATIVE CLAIM AGAINST ALBERT FRIED & CO. AND DEFENDANT STEELMAN, INC. – COMPLAINT TO RECOVER WILLIAMS FARM PROPERTY AS A FRAUDULENT TRANSFER UNDER 11 U.S.C. § 544 AND THE UTAH UNIFORM FRAUDULENT TRANSFER ACT

186.    Plaintiff hereby incorporates by this reference all of the allegations contained in paragraphs 1 through 185 above as if set forth fully herein.

187.    Williams Farm LLC purportedly granted the Option to Albert Fried & Co. on or around January 25 or 26, 2001.  At the time of the grant, Williams Farm LLC was not obligated to Albert Fried & Co. for anything.  The Option on the Williams Farm Property was signed on May 2, 2001 and recorded on May 15, 2001.

188.    The transfer of the Williams Farm Property to Defendant Steelman, Inc. as assignee of Albert Fried & Co. pursuant to the provisions of the Utah Uniform Fraudulent Transfer Act occurred on May 23, 2002 when the Special Warranty Deed from Williams Farm LLC to Steelman, Inc. was recorded in Utah County, Utah. The transfer of the Williams Farm Property to Defendant Steelman, Inc. as assignee of Albert Fried & Co. was without consideration, was for less than reasonably equivalent value.

189.    There was no consideration and no reasonably equivalent value given by Albert Fried & Co. to Williams Farm LLC for the grant of the Option.

190.    The amount paid by Steelman, Inc. for the Williams Farm Property was approximately $75,000.  At the time of the closing, the Williams Farm Property had a fair market value of at least $5 million.

191.    Williams Farm LLC granted the Option upon the Williams Farm Property to Albert Fried & Co. with the actual intent to hinder, delay or defraud the creditors of Williams Farm LLC.

192.    Williams Farm LLC transferred the Williams Farm Property to Defendant Steelman, Inc. for less than reasonably equivalent value.

193.    Williams Farm LLC did not receive reasonably equivalent value in exchange for the transfer of the Williams Farm Property to Defendant Steelman, Inc.

194.    At the time of the transfer of the Williams Farm Property to Defendant Steelman, Inc., Williams Farm LLC was engaged or was about to engage in a business or a transaction for which the debtor's remaining assets were unreasonably small.

195.    At the time of the transfer of the Williams Farm Property to Defendant Steelman, Inc. Williams Farm LLC, Williams Farm LLC intended to incur, or believed or reasonably should have believed that it would incur, debts beyond the debtor's ability to pay as they matured, in that Williams Farm LLC was unable to pay the PBGC obligation or any of the contribution obligated to Geneva Steel LLC, Geneva Steel Holding, Corp., and Iron Ore Mines LLC.

196.    At the time of the transfer of the Williams Farm Property to Defendant Steelman, Inc. Williams Farm LLC, Williams Farm LLC was insolvent at the time the transfer was made or became insolvent as a result of the transfer.

197.    The transfers made by Williams Farm LLC were fraudulent as to creditors to Williams Farm LLC as the transfers were made to insiders for an antecedent debt, Williams Farm LLC was insolvent at the time of the transfers and Defendants Albert Fried & Co. and Steelman, Inc. had reasonable cause to believe that Geneva Steel LLC was insolvent at the time of the transfers.

198.    The Plaintiff is entitled to a declaratory judgment that the transfer of the Williams Farm Property to Steelman, Inc. was fraudulent under U.C.A. § 25-6-1 et. seq.  Plaintiff is entitled to a judgment setting aside the transfer of the Williams Farm to these defendants. Plaintiff is entitled to recover the Williams Farm Property pursuant to §544 and §550 of the bankruptcy code or the reasonable value thereof.

55

## X.  NINTH CLAIM FOR RELIEF – ALTERNATIVE CLAIM AGAINST ALBERT FRIED & CO. AND DEFENDANT STEELMAN, INC. – COMPLAINT TO SET ASIDE FIRST REDUCTION OF WILLIAMS FARM OPTION PRICE AS A FRAUDULENT TRANSFER UNDER 11 U.S.C. § 544 AND THE UTAH UNIFORM FRAUDULENT TRANSFER ACT

199.    Plaintiff hereby incorporates by this reference all of the allegations contained in paragraphs 1 through 198 above as if set forth fully herein.

200.    Williams Farm LLC purportedly reduced the Option price on the Williams Farm Property to Albert Fried & Co. on or around September 17, 2001 (i.e. the First Reduction of the Williams Farm Option).  At the time of this First Reduction, Williams Farm LLC was not obligated to Albert Fried & Co. for anything.  There was no consideration and no reasonably equivalent value given by Albert Fried & Co. to Williams Farm LLC for the First Reduction of the Williams Farm Option.

201.    Albert Fried & Co. did not provide any value or consideration to Williams Farm LLC, Geneva Steel LLC, or Iron Ore Mines LLC at time of the First Reduction of the Williams Farm Option.  At the time of the First Reduction of the Williams Farm Option, the Williams Farm Property had a fair market value of approximately $5 million.

202.    Williams Farm LLC purportedly granted the First Reduction of the Williams Farm Option to Albert Fried & Co. with the actual intent to hinder, delay or defraud the creditors of Williams Farm LLC.

203.    Williams Farm LLC purportedly granted the First Reduction of the Williams Farm Option to Albert Fried & Co. for less than reasonably equivalent value.

204.     Williams Farm LLC purportedly granted the First Reduction of the Williams Farm Option to Albert Fried & Co. and did not receive reasonably equivalent value in exchange for the First Reduction.

205.     At the time Williams Farm LLC purportedly granted the First Reduction of the Williams Farm Option to Albert Fried & Co. Williams Farm LLC was engaged or was about to engage in a business or a transaction for which the debtor's remaining assets were unreasonably small.

206.     At the time Williams Farm LLC purportedly granted the First Reduction of the Williams Farm Option to Albert Fried & Co., Williams Farm LLC intended to incur, or believed or reasonably should have believed that it would incur, debts beyond the debtor's ability to pay as they matured, in that Williams Farm was unable to pay the PBGC obligation and any other obligation it had at the time.

207.     At the time Williams Farm LLC purportedly granted the First Reduction of the Williams Farm Option to Albert Fried & Co., Williams Farm LLC was insolvent or became insolvent as a result of the transfer or obligation.

208.     The First Reduction of the Williams Farm Option was fraudulent as to creditors of Williams Farm LLC because Williams Farm LLC was insolvent at the time of the First Reduction of the Williams Farm Option and Defendants Albert Fried & Co. and Steelman, Inc. had reasonable cause to believe that Geneva Steel LLC was insolvent at the time of the First Reduction of the Williams Farm Option price.

209.     The Plaintiff is entitled to a declaratory judgment that the First Reduction of the Williams Farm Option price was fraudulent under U.C.A. § 25-6-1 et. seq.  Plaintiff is entitled to

a judgment setting aside the First Reduction of the Williams Farm Option price to the Albert

Fried & Co..  Plaintiff is entitled to recover the value of the First Reduction of the Williams Farm

Option price for the benefit of the estate of Williams Farm Property pursuant to §544 and §550

of the Bankruptcy Code.

## XI.   TENTH CLAIM FOR RELIEF – ALTERNATIVE CLAIM AGAINST ALBERT FRIED & CO. AND DEFENDANT STEELMAN, INC. – COMPLAINT TO SET ASIDE SECOND REDUCTION OF WILLIAMS FARM OPTION PRICE AS A FRAUDULENT TRANSFER UNDER 11 U.S.C. § 544 AND THE UTAH UNIFORM FRAUDULENT TRANSFER ACT

210.    Plaintiff hereby incorporates by this reference all of the allegations contained in

paragraphs 1 through 209 above as if set forth fully herein.

211.    Williams Farm LLC again reduced the option price on the Williams Farm Option

to Albert Fried & Co. on or around April 23, 2002 (i.e. the "Second Reduction" of the Williams

Farm Option).  At the time of the Second Reduction of the Williams Farm Option, Williams

Farm LLC was not obligated to Albert Fried & Co. for anything.  There was no consideration

and no reasonably equivalent value given by Albert Fried & Co. to Williams Farm LLC for the

Second Reduction of the Williams Farm Option.

212.    Albert Fried & Co. did not provide any value or consideration to Williams Farm

LLC, Geneva Steel LLC, or Iron Ore Mines LLC at time of the Second Reduction of the

Williams Farm Option.  At the time of the Second Reduction of the Williams Farm Property had

a fair market value of approximately $5 million.

213.    Williams Farm LLC purportedly granted the Second Reduction of the Williams

Farm Option to Albert Fried & Co. with the actual intent to hinder, delay or defraud the creditors

of Williams Farm LLC.

214.   Williams Farm LLC purportedly granted the Second Reduction of the Williams Farm Option to Albert Fried & Co. for less than reasonably equivalent value.

215.   Williams Farm LLC purportedly granted the Second Reduction of the Williams Farm Option to Albert Fried & Co. and did not receive reasonably equivalent value in exchange for this reduction.

216.   At the time Williams Farm LLC purportedly granted the Second Reduction of the Williams Farm Option to Albert Fried & Co. Williams Farm LLC was engaged or was about to engage in a business or a transaction for which the debtor's remaining assets were unreasonably small.

217.   At the time Williams Farm LLC purportedly granted the Second Reduction of the Williams Farm Option to Albert Fried & Co., Williams Farm LLC intended to incur, or believed or reasonably should have believed that it would incur, debts beyond the debtor's ability to pay as they matured, in that Williams Farm was unable to pay the PBGC obligation and any other obligation it had at the time.

218.   At the time Williams Farm LLC purportedly granted the Second Reduction of the Williams Farm Option to Albert Fried & Co., Williams Farm LLC was insolvent or became insolvent as a result of the transfer or obligation.

219.   The Second Reduction of the Williams Farm Option made by Williams Farm LLC was fraudulent as to creditors of Williams Farm LLC as the Second Reduction of the Williams Farm Option price was made to an insider for an antecedent debt, Williams Farm LLC was insolvent at the time of the Second Reduction of the Williams Farm Option price and

Defendants Albert Fried & Co. and Steelman, Inc. had reasonable cause to believe that Geneva

Steel LLC was insolvent at the time of the Second Reduction of the Williams Farm Option price.

220.    The Plaintiff is entitled to a declaratory judgment that the Second Reduction of

the Williams Farm Option price was fraudulent under U.C.A. § 25-6-1 et. seq.   Plaintiff is

entitled to a judgment setting aside Second Reduction of the Williams Farm Option price to the

Albert Fried & Co.  Plaintiff is entitled to recover the value of the Second Reduction of the

Williams Farm Option price for the benefit of the estate the Williams Farm Property pursuant to

§544 and §550 of the bankruptcy code.

## XII.  ELEVENTH CLAIM FOR RELIEF – FOR QUIET TITLE OF INTERESTS IN THE WILLIAMS FARM PROPERTY AGAINST ALBERT FRIED & CO. AND DEFENDANT STEELMAN, INC.

221.    Plaintiff hereby incorporate by this reference all of the allegations contained in

paragraphs 1 through 220 above as if set forth fully herein.

222.    Plaintiff holds an interest in the Williams Farm Property, which is prior and

superior to the interests of all other parties to this action.

223.    Plaintiff is entitled to a judgment, order and decree quieting title in favor of

Plaintiff and against all Defendants.

## XIII.  TWELFTH CLAIM FOR RELIEF, ALTERNATIVE CLAIM AGAINST ALBERT FRIED & CO. AND DEFENDANT STEELMAN, INC. – COMPLAINT TO SET ASIDE OPTION, FIRST REDUCTION OF WILLIAMS FARM OPTION, SECOND REDUCTION OF WILLIAMS FARM OPTION AND TRANSFER OF WILLIAMS FARM AS FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 548

224.    Plaintiff hereby incorporate by this reference all of the allegations contained in

paragraphs 1 through 223 above as if set forth fully herein.

225.    The granting of the Option, the First Reduction of the Williams Farm Option, the Second Reduction of the Williams Farm Option, and the transfer of the Williams Farm Property from Williams Farm LLC (collectively "Fraudulent Transfers") constitute fraudulent transfers and obligations within the meaning of 11 U.S.C. § 548.

226.    The trustee may avoid the Fraudulent Transfers because the Debtor(s): (a) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the Debtor(s) was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (b) received less then reasonably equivalent value in exchange for such transfer or obligation and was either: (i) insolvent on the day that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor(s) was an unreasonably small capital; or (iii) intended to incur or believe that the Debtor(s) would incur, debts that would be beyond the Debtor(s)' ability to pay as such debts matured. The Fraudulent Transfers were made or incurred on or within one-year before the date of the filing of the petitions by the Debtors herein.

227.    Albert Fried & Co. and/or Steelman, Inc. is the beneficiary or recipient of the Fraudulent Transfers.

228.    Pursuant to 11 U.S.C. § 550, the Trustee is entitled to recover from Albert Fried & Co. and/or Steelman, Inc. the property constituting the Fraudulent Transfers or the value of such property constituting the Fraudulent Transfers.

## XIV.  THIRTEENTH CLAIM FOR RELIEF – AVOIDANCE OF THE FRAUDULENT TRANSFERS PURSUANT TO 28 U.S.C. § 3301 ET SEQ.

229.    Plaintiff hereby incorporate by this reference all of the allegations contained in paragraphs 1 through 228 above as if set forth fully herein.

230.    The above-described Fraudulent Transfers constitute transfers which are recoverable or avoidable under 28 U.S.C. § 3301, et seq.

231.    Pursuant to 11 U.S.C. § 544 and because of the United States is a creditor herein by and through the PBGC, the Fraudulent Transfers are avoidable by the Trustee pursuant to 28 U.S.C. § 3301.

WHEREFORE, the Plaintiff respectfully prays as follows:

1.    For a judgment in favor of Plaintiff: (a) declaring and determining the validity and extent of Albert Fried Co.'s claim against Debtor Geneva Steel LLC; (b) equitably subordinating the claim of Albert Fried & Co. to all other creditors of the Debtors; and (c) requiring and compelling Albert Fried & Co. to disgorge all payment made to or for the benefit of Albert Fried & Co. from anyone or all of the Debtors including, without limitations, all payment on account of attorneys' fees for services benefiting Albert Fried & Co.

2.    For a judgment in favor of the Plaintiff and against the Albert Fried for all damages caused to the estates herein by his breach of the duty of care, breach of the duty of loyalty, and breach of fiduciary duty, in an amount to be determined at the time of trial, including all actual and consequential damages, attorneys fees, interests, court costs and such additional relief as to the Court seems just and proper;

3.      For a judgment in favor of the Plaintiff and against Albert Fried in an amount equal to all damages caused to the Debtors by the wrongful action's of Albert Fried and/or the unjust enrichment received by Albert Fried;

4.      For a judgment in favor of Plaintiff and against the Defendants Albert Fried & Co. and Steelman, Inc. to set aside and void the transfer of the Option on the Williams Farm Property and the transfer of the Williams Farm Property from Williams Farm LLC to Steelman, Inc. and ordering a reconveyance of the Williams Farm Property to Williams Farm LLC or a judgment for the value of the Williams Farm Property.

5.      For a judgment in favor of Plaintiff and against the Defendants Albert Fried & Co. and Steelman, Inc. to set aside and void the First Reduction of the Williams Farm Option.

6.      For a judgment in favor of Plaintiff and against the Defendants Albert Fried & Co. and Steelman, Inc. to set aside and void the Second Reduction of the Williams Farm Option.

7.      For a judgment, order and decree quieting title in favor of the Plaintiffs and against all Defendants in and to the Williams Farm Property.

8.      Upon all claims herein, such other and further relief as the Court deems justified including, if appropriate, an award of attorneys' fees, cost of this action, expert witness fees, and pre-judgment and post-judgment interests.

RESPECTFULLY submitted this 16th day of September 2005.


RAY QUINNEY & NEBEKER, P.C.


/s/ Steven T. Waterman
Annette W. Jarvis (1649)
Steven T. Waterman (4164)
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
BLOCK MARKUS & WILLIAMS, LLC

And

John F. Young, Esq.
Steven R. Rider, Esq.
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809

*Attorneys for Plaintiff*

**Address of Plaintiffs**:
10 South Geneva Road
Vineyard, UT  84058